# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

OSCAR BARRERA, #294-366,  *

Plaintiff  *

v  *  Civil Action No. RDB-18-1993

WEXFORD HEALTH SOURCES, INC.,  *
DR. MAHBOOBEH MEMARSADEGHI, M.D.,
DR. AVA JOUBERT-CURTIS, M.D.,  *
CRYSTAL JAMISON, P.A.,
DR. JOHN MORGAN, M.D.  *

Defendants  *
***

## MEMORANDUM OPINION

Plaintiff Oscar Barrera, who is incarcerated at Roxbury Correctional Institution in Hagerstown ("RCI"), seeks compensatory and punitive damages and injunctive relief mandating he be provided arthroscopic surgery he waspromised in 2012. His lawsuit, filed pursuant to 42 U.S.C. § 1983, names Medical Defendants Mahboobeh Memarsadeghi ("Dr. Memarsadeghi"), Ava Joubert-Curtis, M.D. ("Dr. Joubert"), Crystal Jamison, P.A. ("Physicians' Assistant Jamison" or "PA Jamison"), and John Morgan, M.D.[1] ("Dr. Morgan"), who at the time relevant to the Complaint were employed by Defendant Wexford Health Sources, Inc. ("Wexford"). ECF No. 1, p. 1; ECF No. 4, p. 2.[2] Barrera alleges that he has not received previously-approved surgery to correct a lateral meniscus tear,[3] and remains in pain in violation of the Eighth Amendment. ECF 1, pp. 4-5.

---

[1] The Clerk shall correct the docket to reflect the full and accurate spelling of Defendants' names.

[2] This opinion cites to pagination assigned by the Court's electronic docketing system.

[3] The approval of the arthroscopy debridement is documented in a status report submitted in *Barrera v. CMS, et al.*, Civil Action No. RWT-11-2394 (D. Md.), at ECF No. 25.

Now pending before the Court is Defendants' Motion to Dismiss or, Alternatively, Motion for Summary Judgment (ECF No. 11), Barrera's opposition response (ECF No. 17),[4] and Defendants' reply to the opposition. ECF No. 18. Several non-dispositive motions, including Barrera's second Motion to Appoint Counsel (ECF No. 19) and his various supplemental pleadings (ECF Nos. 20, 21, 23, 26 and 27) and Defendants' responses thereto (EF Nos. 22 and 25) are pending review. For the reasons stated below, Barrera's non-dispositive motions are DENIED, and Defendants' dispositive motion, construed as a motion for summary judgment,[5] IS GRANTED.

## Background

On March 8, 2012, the Honorable Roger W. Titus granted summary judgement in favor of health care provider Correctional Medical Services, Inc. ("CMS") based upon CMS's assertion that Barrera, a Maryland state prisoner, would be provided an MRI to diagnose and address ongoing knee problems. *See Barrera v. CMS, et al.*, Civil Action No. RWT-11-2394 (D. Md.). A status report submitted on April 20, 2012 stated an MRI had been performed, a lateral meniscus tear of the right knee had been found, and arthroscopic surgery would be scheduled.

On May 1, 2018, Barrera sought reconsideration in the earlier case, alleging the surgery never occurred. Judge Titus denied reconsideration and directed the Clerk to instead open this

---

[4] Barrera's Motion for Extension of Time to file his opposition response, ECF No. 16, is granted *nunc pro tunc.*

[5] Defendants' dispositive motion is treated as a motion for summary judgment under Federal Rule of Civil Procedure 56 because materials outside the original pleadings have been considered. *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

action against Barrera's current health care provider, Wexford.[6] Barrera was granted an opportunity to file an amended complaint in this new action naming the health care providers who have ignored his need for surgery, and has done so.

## A. Barrera's Allegations

In his Complaint, as amended, Barrera states the "prior diagnosis of a lateral meniscus tear remains the medical complication" causing pain and limiting mobility. ECF No. 1, p. 5. He states that over the intervening six years, he has "repeated[ly] complained of extreme pain," "repeatedly informed [Wexford employees] that surgery was needed and has received "excuses concerning money reasons as the reason why surgery has not been provided." ECF No. 4, p. 3. Barrera further states that "adjusting and readjusting his medications" is ineffective and "fall[s] far short of the prescribed surgery which was ordered by the doctor over six years ago." *Id.*

## B. Defendants' Assertions

In moving for summary judgment, Defendants provide Barrera's medical records and an affidavit of Erwin Aldana, M.D., detailing Barrera's history of chronic right leg and low back pain. ECF Nos. 11-4 and 11-5. Defendants demonstrate that the surgery recommended in Barrera's earlier lawsuit, arthroscopic repair of a torn meniscus in the right knee and debridement of the joint, was performed at Bon Secours Hospital in March 2012. ECF No. 11-5, ¶ 5; ECF No. 11-4, pp. 7-16.

---

[6] Wexford replaced CMS as the prison health care provider on July 1, 2012. *See* Affidavit of Erwin Aldana, M.D., ECF No. 11-5, ¶ 1. On December 31, 2018 Wexford's contract with Maryland's Department of Public Safety and Correctional Services ("DPSCS") expired. On January 1, 2019, CMS commenced a new contract with DPSCS. *See* http://www.corizonhealth.com/Corizon-News/corizon-health-to-partner-with-the-state-of-maryland (last reviewed July 8, 2019).

3

On April 18, 2012, Jonathan Thompson, M.D. recommended Barrera receive arthroscopic surgery. ECF No. 11-4, pp. 2-3. Surgery was approved and on May 3, 2012 was performed by Ashok Krishnaswamy, M.D. at Bon Secours Hospital *Id.*, pp. 7-16. Barrera returned to prison the day of surgery and was given pain medication (initially Percocet, then Tylenol # 3 with codeine)[7] and an antibiotic. *Id.*, pp. 17-19. Following a June 6, 2012 orthopedic consult, Barrera was provided a bottom bunk for four weeks, an order that was later extended. *Id.*, pp. 20-25. During his June 2012 annual examination, Barrera voiced no complaints. *Id.*, pp. 27-29.

During a July 25, 2012 chronic care clinic checkup, David Didden, M.D. ("Dr. Didden") noted that Barrera's chart should be reviewed to determine whether additional orthopedic consults were needed. *Id.*, pp. 30-31. Barrera's complaints of back and right knee pain, relieved by Tylenol #3, were assessed as related to childhood stress and violence. *Id.*

During his October 31, 2012 chronic care clinic, Barrera requested a bottom bunk but had no other complaints. *Id.*, pp. 32-33.

At his February 21, 2013 chronic care clinic, Barrera complained of right back and left heel pain. *Id.*, pp. 34-35. Dr. Didden noted Barrera had a limb length discrepancy (LLD) that was a probable source of the pain. *Id.* Dr. Didden advised Barrera that remaining on the pain medications prescribed in October 2012 during a consult with an orthopedic surgeon could be harmful, and suggested Barrera be referred for orthotic fitting before his pain medications were adjusted. *Id.* The Tylenol #3 prescription was renewed. *Id.*

---

[7] Both medications are opioids. *See* https://www.drugs.com/mtm/tylenol-with-codeine-3.html (last reviewed July 9, 2019) and https://www.webmd.com/drugs/2/drug-7277/percocet-oral/details (last reviewed July 9, 2019).

4

On March 11, 2013, Barrera received orthotic shoes with an insert/lift. Five days later, on March 16, 2013, he received heel cups. *Id.*, pp. 36-37.

On May 14, 2013, Dr. Morgan discontinued Barrera's Tylenol #3 and prescribed 600 mg of Neurontin[8] twice daily. *Id.*, pp. 40-42. Dr. Morgan noted Barrera had a knee brace and cane but walked without a limp and had no effusion or outward abnormality of gait. *Id.* He was mildly limited when squatting but bent over easily. *Id.* Dr. Morgan determined there was no medical indication for a bottom bunk order or knee brace, a decision with which Barrera disagreed. *Id.*

During a May 18, 2013 sick call visit, Barrera asked a nurse for a bottom bunk order. The nurse indicated only a provider could issue such an order and the provider had just determined it was not medically indicated. Barrera was observed walking with a good strong gait, bending the right knee and using both legs equally. *Id.*, p. 43.

On July 1, 2013, Barrera complained to PA Jamison that Dr. Morgan had cancelled his orders for bottom bunk, a knee brace and cane. *Id.*, p. 44. PA Jamison spoke with the medical director who thought the diagnosis was accurate and that Barrera did not need to be seen ahead of his next chronic care clinic. *Id.*

On July 25, 2013, Barrera saw Dr. Morgan at a scheduled provider visit to discuss his non-compliance with Neurontin. *Id.*, p. 45. Dr. Morgan noted Barrera's limp markedly improved when he was not under direct observation. *Id.*

During an August 5, 2013 chronic care clinic, Dr. Morgan noted Barrera was compliant with Neurontin. *Id.* at 46-47. Barrera complained of a swollen knee after custody staff confiscated

---

[8] Neurontin (gabapentin) is a seizure medication also prescribed to relieve nerve pain following shingles. *See* https://www.webmd.com/drugs/2/drug-9845-8217/neurontin-oral/gabapentin-oral/details (last reviewed July 9, 2019).

5

his knee brace, but Dr. Morgan saw no swelling. *Id.*, pp. 46-47. There were no unfulfilled orthopedic consults. *Id.*

At his November 4, 2013 chronic care clinic, Barrera's right knee was not swollen or tender. The Neurontin prescription was renewed. *Id.*, pp. 48-49. The visit was terminated when Barrera demanded a knee brace and cane. *Id.* On March 14, 2014, Barrera's prescriptions for Neurontin and Ibuprofen (a non-steroidal anti-inflammatory drug or NSAID) were renewed. *Id.*, p. 50.

On November 4, 2015, Barrera was seen by Dr. Joubert at a chronic care clinic. *Id.*, pp. 52-55. He was to be tapered off Neurontin and instead prescribed a muscle relaxer, Robaxin.[9] *Id.* Barrera was using a cane and told Dr. Joubert he was waiting for a total knee replacement. *Id.*

On December 8, 2015, Barrera complained to Nurse Diaz that his new pain medications were not working. *Id.*, p. 56. His right knee had crepitation but full flexion and extension. *Id.* Barrera complained of pain rated at 8/10 in both knees and walked with a cane. *Id.* When he complained at sick call on December 15, 2015 that Neurontin no longer stopped his pain, he was referred to a provider. *Id.*, pp. 57-58.

On January 18, 2016, Barrera complained to PA Jamison that he experienced pain after medication changes and that Nortriptyline[10] made him vomit. *Id.*, pp. 59-60. He was referred to the regional medical director for pain medication suggestions. *Id.*

---

[9] *See* https://www.webmd.com/drugs/2/drug-11197/robaxin-oral/details (last reviewed July 9, 2019).

[10] Nortriptyline is an antidepressant that is less toxic than other medications and displays less drug interactions. *See* https://www.drugbank.ca/drugs/DB00540 (last reviewed July 9, 2019).

6

At a February 17, 2016 chronic care clinic, Barrera complained to Dr. Memarsadeghi of chronic right knee pain and left knee pain. *Id.*, pp. 61-63. His Nortriptyline dose was increased to 25mg. *Id.* His limb length discrepancy was considered a source of low back pain. *Id.* An x-ray of the left knee was ordered. *Id.* The knee x-ray, read on February 26, 2016, showed no acute disease in the right knee, although degenerative joint disease was present. *Id.*, p. 64. The left knee x-ray showed no evidence of an acute fracture, dislocation or subluxation. *Id.*

On March 2, 2016, Barrera complained to Monica Stallworth, M.D. that Nortriptyline made him vomit and his pain had worsened and he needed a cane. He asked that his Neurontin prescription be restored. *Id.*, p. 65-66. He was prescribed Neurontin 400 mg at bedtime. *Id.* On March 24, 2016, the dosage was increased at Barrera's request to 800mg. *Id.*, pp. 67-68.

Barrera had no complaints at his July 20, 2016 annual physical. *Id.*, p. 69.

On August 2, 2016, Barrera reported an increase in pain to Dr. Memarsadeghi during a chronic care clinic. *Id.*, pp. 70-72. Neurontin was continued. *Id.*

Barrera was evaluated for physical therapy on January 24, 2017.*Id.*, p. 73. The therapist assessed degenerative joint disease, instability in the right knee, and compensatory low back pain and set a goal to decrease symptoms by establishing a self-management plan. *Id.* Physical therapy sessions occurred on January 31, 2017 and February 2, 7, 9, 14, and 16, 2017. *Id.*, pp. 74-79. Barrera was discharged to a home exercise program (HEP). *Id.*, p. 79.

On March 27, 2017, Barrera complained to Dr. Memarsadeghi at chronic care clinic that his pain caused him to fall. *Id.*, pp. 81-82. A back brace was requested and Neurontin was renewed. *Id.*

During a June 16, 2017 chronic care clinic, Barrera was counseled on the toxicity of Neurontin and Tylenol but indicated he wanted to continue taking these medications, together with Naproxen and Baclofen. *Id.*, pp. 83-84.

On September 6, 2017, Barrera voiced no new complaints to Dr. Memarsadeghi at his chronic care clinic. *Id.* at 85-88. His Neurontin prescription was renewed. *Id.* He saw Dr. Memarsadeghi again on November 20, 2017, and complained that sudden pain caused him to fall. *Id.*, pp. 89-91. Barrera was issued a new cane. *Id.*

On December 8, 2017, Plaintiff was seen by Dr. Memarsadeghi at a scheduled provider visit to discuss tapering him from Neurontin and substituting Tramadol and Amitriptyline for pain. The possibility of other pain management options also was discussed. *Id.*, pp. 92-94.

During a December 29, 2017 sick call visit, Barrera complained to Nurse Gilbert that he did not receive Tramadol and that Amitriptyline was ineffective. *Id.*, pp. 95-96. He was in no apparent distress, and was referred to a provider. *Id.*

On January 23, 2018, Barrera complained to PA Jamison that his pain medication, which included Tramadol, Amitriptyline, Naproxen, Baclofen and Tylenol, was not working. *Id.*, pp. 99-100. He asked for an increase in Tramadol increased from once to twice daily. Barrera was informed that Tramadol was not recommended for chronic pain. *Id.* An increase in Amitriptyline was recommended for his morning regimen but was declined. Barrera indicated he would think about steroid injections for his knees but stated they did not provide relief in the past. *Id.* He was encouraged to continue strengthening and stretching exercises. *Id.*

At his February 16, 2018 chronic care clinic, Barrera and Dr. Memarsadeghi discussed recent x-rays, which showed mild loss of vertebral height and spaces in the spine at

L3-S1, endplate sclerosis and osteophytes, and mild degenerative joint disease in both knees. *Id.*, pp. 101. 104. A request for a back brace was sent to the assistant director of nursing and pain medications, including Tramadol, were renewed. *Id.* Tramadol was also renewed on May 15, 2018. *Id.*, p. 105.

A May 21, 2018, chronic care visit with Dr. Memarsadeghi was unremarkable. *Id.*, pp. 16-108. At his July 19, 2018 annual physical, Barrera voiced no complaints to PA Jamison. *Id.*, pp. 109-111.

Defendants also updated information concerning ongoing treatment for Barrera's knee and back pain, indicating he currently receives Glucosamine Chondroitin, Naproxen, Tylenol Extra Strength, Baclofen, Amitriptyline and Tramadol. Aldana Affidavit, ECF No. 11-5, ¶ 6. Dr. Aldana notes that Tramadol is not intended for long-term use to treat chronic pain, and an alternative to Tramadol may be necessary. *Id.*

Defendants note that Barrera was weaned off Neurontin, his preferred pain medication, after Neurontin was identified by the DPSCS State Medical Director as a medication with patterns of overuse and abuse, including hoarding of this medication by inmates for improper use due to its narcotic and sedative like affect or for trade to other inmates for misuse in exchange for secondary benefits.[11] To address these issues with regard to Neurontin, DPSCS eliminated its use for non-FDA approved conditions absent exceptional circumstances. Defendants note that Neurontin is FDA approved as an anticonvulsant for seizure conditions and for treatment of neuropathic pain (nerve pain) caused by herpes virus or shingles (herpes zoster), conditions from which Barrera does not suffer. Aldana Affidavit, ECF No. 11-5, ¶ 8.

---

[11] Nothing in the record suggests Barrera was involved in improper conduct regarding his pain medications.

### C. Barrera's Opposition Response

Barrera states that he was forced to wait four months after his 2012 referral to begin physical therapy, he has consistently complained of knee pain, and that Dr. Morgan took his cane and knee brace for a period during 2013, causing him to fall. ECF No. 17 at 2. He states Dr. Joubert told him in November 4, 2015 that she would discontinue his pain medication and refuse to refer him to "outside doctors or [an] orthopedic doctor" in retaliation for his filing a lawsuit against her. ECF No. 17, p. 5. Barrera suggests for the first time that "[D]efendants submitted knowingly false information to the court that they provided [him] knee replacement surgery." And that despite complaints of pain, medical staff "refused to comply with the doctor's prescribed order for [knee] replacement surgery." ECF No. 17, p. 10.

Before addressing the issues raised by the parties, the Court shall first examine other pending motions.

### Non-Dispositive Motions

### A. Appointment of Counsel

Barrera again seeks appointment of counsel, arguing that the medical issue is complex, discovery has not occurred, and he has limited knowledge and access to a law library. ECF No. 19. As previously explained, federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1)[12] is discretionary and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975); *see also, Branch v. Cole*, 686 F.2d 264 (5th Cir. 1982). There is no absolute right to appointment of counsel absent "exceptional circumstances." *See Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987).

---

[12] Under § 1915(e)(1), a Court of the United States may request an attorney to represent any person unable to afford counsel.

Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it." *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by *Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel). Barrera has demonstrated the wherewithal to either articulate the legal and factual basis of his claims himself or secure meaningful assistance in doing so. Further, the issue pending before the Court is not unduly complicated. There are no exceptional circumstances that would warrant the appointment of an attorney to represent Barrera under §1915(e)(1), and Barrera's request for representation is denied.

## B. Other Non-Dispositive Pleadings

The medical issue set forth in Barrera's Complaint, as supplemented (ECF Nos. 1 and 4) concerned ongoing pain caused by a failure to provide arthroscopic right knee surgery that had been scheduled in 2012.

As noted in Barrera's "Supplemental Response to the Defendants Dispositive Motion" dated November 29, 2018, at the time he wrote this Complaint, Barrera did not understand the difference between the surgery scheduled in 2012, which involved same-day arthroscopic repair and debridement of his torn right knee meniscus, and the surgery he now believes is needed, total knee replacement. Barrera now states that in 2012 he was told by the surgeon who performed the arthroscopic surgery that if meniscus debridement failed to correct his knee problems, total knee replacement would be necessary. *See* ECF No. 20, p. 2.

Defendants contend –correctly -- that the Complaint now before the Court references the arthroscopic surgery that was to be performed pursuant to medical findings made in 2012, and in no way references total knee replacement. Defendants argue that Barrera's claims in the instant lawsuit should be limited to the issue raised in the Complaint concerning whether the arthroscopic

debridement promised in 2012 occurred and the adequacy of pain management following that surgery, and they move to strike Barrera's "Supplemental Response" clarifying the scope and intent of his Complaint as an impermissible surreply. ECF No. 22.

A surreply is permitted when the moving party would be unable to contest any matters raised by the opposing party in their reply for the first time. *See Lewis v. Rumsfeld*, 154 F. Supp.2d 56, 61 (D. D.C. 2001). In this district, a surreply is not generally permitted unless ordered, *see* Local Rule 105.2(a) (D. Md. 2018), and are generally disfavored. *See Chubb & Son v. C & C Complete Servs., LLC*, 919 F. Supp. 2d 666, 679 (D. Md. 2013). They may be permitted "when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply," *TECH USA, Inc. v. Evans*, 592 F. Supp. 2d 852, 861 (D. Md. 2009). This exception is not applicable here.

Defendants contend that they have not raised new matters for the first time in their reply, and move to strike the surreply. However, Barrera's "Supplemental Response" is not a surreply; instead, it is an eleventh-hour attempt to amend his Complaint to add a new claim concerning the need for knee replacement. The Court may not address this new claim because such response, filed in opposition to a dispositive motion, is not a vehicle for amending a pleading. *See Whitten v. Apria Healthcare Grp., Inc.*, No. PWG-14-3193, 2015 WL 2227928, at *7 (D. Md. May 11, 2015); *Saunders v. Putnam Am. Gov't Income Fund*, No. JFM-04-560, 2006 WL 1888906, at *2 n. 2 (D. Md. July 7, 2006). Such amendment will not be permitted here, and Barrera's "Supplemental Response" (ECF No. 20, construed as a Motion to Amend the Complaint, is denied.[13]

---

[13] Defendants' Motion to Strike Surreply (ECF No. 22) accordingly is denied, as are Barrera's belated "Motions for Leave to Consider Plaintiff's Surreply," ECF Nos. 26 and 27.

Barrera's "Supplemental to Motion" (ECF No. 21) alleging the denial of physical therapy in 2012 after meniscus surgery also is construed as a request to amend the Complaint and for reasons noted above is denied.

Barrera's "Second Supplement Motion" (ECF No. 23) outlines Barrera's attempt to grieve his medical issue with the Inmate Grievance Office. Defendants move to strike this Motion as a surreply. The "Second Supplement Motion" is best construed as a surreply, and Defendants' Motion to Strike (ECF No. 25) is granted.

The Court will now examine the merits of Barrera's claim that he has been wrongfully denied adequate treatment for right knee pain.

## Standard of Review

This Court is mindful of its obligation to liberally construe the pleadings of pro se litigants. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, liberal construction does not mean that this Court can ignore a clear failure in the pleading to allege facts which set forth a cognizable claim, *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990), or "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). In making this determination, "[t]he district court . . . must hold the pro se complaint to less stringent standards than pleadings drafted by attorneys and must read the complaint liberally." *White v. White*, 886 F. 2d 721, 722-23 (4th Cir. 1989).

A motion for summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of

fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing that there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the Court must draw all reasonable inferences in favor of, and construe the facts in the light most favorable to, the non-moving party. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998). Nevertheless, a party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Thus, on those issues on which the non-moving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *See Anderson*, 477 U.S. at 256.

## Analysis

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). To state an Eighth Amendment constitutional claim for denial of medical care, Barrera must demonstrate that Defendants' actions, or failures to

14

act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

To satisfy the subjective "deliberate indifference" component, the treatment rendered must, in essence, be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *See Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Miltier*, 896 F.2d at 851. Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U. S. 825, 837 (1994).

"[S]ociety does not expect that prisoners will have unqualified access to healthcare." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (quoting *Hudson v. McMillian*, 503 U. S. 1, 9 (1992)). Therefore, to satisfy the objective "serious medical need" component, a prisoner's medical need must be "'life threatening or pose[ ] a risk of needless pain or lingering disability if not treated at once." *Anderson-El v. O'Keefe*, 897 F. Supp. 1093, 1096 (N.D. Ill. 1995) (quoting *Davis v. Jones*, 936 F.2d 971, 972 (7th Cir. 1991)). In determining whether a deprivation of medical care amounts to an Eighth Amendment violation, courts must consider the severity of the medical need, the potential for harm if medical care was denied or delayed, and whether such harm actually resulted from the treatment, or lack thereof, rendered. *See Burns v. Head Jailor of LaSalle Cty.*, 576 F. Supp. 618, 620 (D. N. Ill. 1984).

There is no question that Barrera suffers some degree of orthopedic pain in his right knee as well as the left knee and back. There is no question that Barrera has been provided minimally invasive arthroscopic surgery in 2012 to debride his right knee and repair torn cartilage. While

15

the surgical report indicates arthroscopic surgery may not eliminate the future need for total knee replacement, the report does not suggest, much less demonstrate, that Barrera was a candidate for such surgery following the arthroscopic procedure.

Further, nothing in the medical record outlined above demonstrates that Barrera's pain level is so severe as to be incapacitating. Barrera has completed physical therapy to strengthen his knee, and he regularly receives pain medications. To the extent he argues his pain medication is ineffective, evidence of unsuccessful medical treatment, such as the inability to reduce pain, is insufficient to establish deliberate indifference. *Baez v. Falor*, 2012 U.S. Dist. LEXIS 138574, 103, 2012 WL 4356768 (W. D. Pa. 2012), citing *Thomas v. Coble*, 55 F. App'x 748, 749 (6th Cir. 2003); *Rochell v. CMS*, No. 4:05CV268, 2006 U.S. Dist. LEXIS 37943, at 10 (N. D. Miss. April 10, 2006) ("The constitution does not . . . guarantee pain-free medical treatment"). Barrera has received pain medication adjustments and some medications have been limited or removed from his pain management regimen due to possible side effects and the possibility of misuse. While it is unfortunate that Barrera is not pain-free, his condition has not been impacted or prolonged due to misconduct on the part of Wexford personnel.

"Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985), citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3rd Cir. 1970). Barrera's treatment for his right knee pain was appropriate and timely. His knee problem is degenerative, and his medical needs may change in the future, requiring additional intervention. At present, however, there are no exceptional circumstances sufficient to overcome Defendants' assessment that they have provided Barrera appropriate, albeit conservative, treatment required for his current medical condition.

16

Accordingly, Defendants' Motion to Dismiss or, Alternatively, for Summary Judgment, construed as a motion for summary judgment, is GRANTED. A separate Order follows.

July 12, 2019
Date

/s/ Richard D. Bennett
RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE